HOFFER BROTHERS, INC., AND NEW YORK INDEMNITY
COMPANY v. WILLIAM SMITH.

June 16, 1927.

1. WORKMEN'S COMPENSATION ACT—*Review by Full Commission of Hearing Before Commissioner—Additional Defense not Raised Before the Hearing Commissioner—Section 55 of the Workmen's Compensation Act, Acts of 1918, Chapter 400, Code of 1924, Section 1887 (55) and Section 60 of the Workmen's Compensation Act, Acts of 1918, Chapter 400, Code of 1924, Section 1887 (60).*—Under section 60 of the workmen's compensation act, Acts of 1918, chapter 400, Code of 1924, section 1887 (60) and section 55 of the workmen's compensation act, Acts of 1918, chapter 400, Code of 1924, section 1887 (55) and the rule adopted by the Commission in pursuance of section 55 referring to the conduct of reviews, the full commission did not err on review of the findings first made by the hearing commissioner in permitting defendant after written notice to the plaintiff to file an additional ground of defense that claimant was a casual employee and argue the same, nor in holding that such defense could be considered upon a review of the case.

2. WORKMEN'S COMPENSATION ACT—*Casual Employee—Furniture Store—Case at Bar.*—Section 2, paragraph "b," of the workmen's compensation act, Acts of 1918, chapter 400, Code of 1924, section 1887 (2,b) and section 15 of the workmen's compensation act, Acts of 1918, chapter 400, Code of 1924, section 1887 (15) are to be construed together. When so construed, one employed as a laborer and put to work assisting in unloading and unpacking furniture for his employer, who was engaged in the retail furniture business, is not a casual employee, although owing to the injury received while so engaged, he did not return to work the next day and had never worked for the employer before nor has he worked for him since the day of the accident. The work he was doing was not of a casual nature but a work which all furniture stores must do in their usual course of business.

3. STATUTES—*Conflict—Presumption Against Conflict.*—It will be assumed that the legislature would not pass an act two sections of which are in irreconcilable conflict.

4. WORKMEN'S COMPENSATION ACT—*General Purpose of the Act.*—The general purpose of the workmen's compensation act was to provide a compensation for all employees injured in the usual course of the employer's business.

5. WORKMEN'S COMPENSATION ACT—*Casual Employee—Test by Which to Determine Casual Employee—Section 2 of the Act, Acts of 1918, Chapter 400, Code of 1924, Section 1887 (2) and Section 15 of the Act, Acts of 1918, Chapter 400, Code of 1924, Section 1887 (15).*—Section 2 of the workmen's compensation act, Acts of 1918, chapter 400, Code of 1924, section 1887 (2); fully protects all employees injured in the usual course of the employer's business. To make certain that those whose employment is not in the usual course of the trade, business or occupation of the employer, shall not receive compensation, it is provided in section 15 that the act shall not apply to "casual employees," that is, employees engaged in a casual employment. The test is the nature of the employment and not the nature of the contract.

6. WORKMEN'S COMPENSATION ACT—*Casual Employee—Section 2 of the Act, Acts of 1918, Chapter 400, Code of 1924, Section 1887 (2) and Section 15 of the Act, Acts of 1918, Chapter 400, Code of 1924, Section 1887 (15).*—An employment cannot be said to be casual where it is in the usual course of the trade, business or occupation of the employer. But it is casual when not permanent nor periodically regular, but occasional, or by chance, and not in the usual course of the employer's trade or business.

7. STATUTES—*Adoption of Statute of Another State—Adoption of Construction Put Upon the Statute—Workmen's Compensation Act.*—The Virginia workmen's compensation act is based on the Indiana act and is written in almost the same language. The Virginia act being, practically speaking, a copy of the Indiana act, the judicial construction placed upon the latter act in that State will be considered to have been adopted along with the act in this State, and in that State it has been held that an injured employee might recover compensation even though his employment was casual, if the employment was in the usual course of the employer's business.

8. WORKMEN'S COMPENSATION ACT—*Accident—Loss of Vision—Case at Bar.*—In the instant case, claimant for compensation under the workmen's compensation act, while at work for his employer, a retail furniture dealer, assisting in unloading and unpacking furniture, was struck in his eye by a splinter from one of the furniture crates. Subsequently a cataract formed. Two doctors and one eye specialist testified that the cataract was caused by an injury or blow on the eye. Another eye specialist testified that it is possible for a traumatic condition to cause a cataract. The Industrial Commission found for claimant.

*Held:* That it plainly appeared from the facts certified by the commission that plaintiff's loss of vision of his left eye was due to an injury by accident arising out of and in the course of his employment.

Appeal from an order of the Industrial Commission.

*Affirmed.*

The opinion states the case.

*S. Burnell Bragg,* for the appellants.

*Fred E. Martin,* for the appellee.

WEST, J., delivered the opinion of the court.

This is an appeal from an award of the Industrial Commission of Virginia in favor of William Smith, plaintiff, against Hoffer Brothers, Incorporated, and New York Indemnity Company, defendants.

The findings were first made by the hearing commissioner, and, upon review, sustained by the commission.

The following is a summary of the facts found and certified by the commission and supported by the evidence:

Hoffer Brothers, Incorporated, were engaged in the retail furniture business in the city of Norfolk. On or about May 1, 1925, they employed plaintiff as a laborer and put him to work assisting in unloading and unpacking some furniture for his employer. He had been at work only a few hours when a splinter from one of the crates struck him in his left eye and caused a cataract to form, which on June 25, 1925, had resulted in the loss of vision in that eye. He continued to work and was paid off at night for that day. When he left he said if his eye was well enough he would return the next day, but the condition of his eye would not permit him to do so. When he returned later, the work in which he was engaged had been finished.

Plaintiff had never worked for Hoffer Brothers before, nor has he worked for them since. Before his injury, plaintiff had been employed, from time to time, as extra man, when needed, by the Postal Telegraph Company. He had worked for that company January 31st, March 2nd, and May 26, 1925, and January 10, 1926.

It appears from the books of Hoffer Brothers, Incorporated, that they had employed extra men in March and about May 1, 1925.

On June 25, 1925, plaintiff's injury was diagnosed as traumatic keratitis. Two doctors and one eye specialist testified that the cataract was caused by an injury or blow on the eye. Another eye specialist testified that it is possible for a traumatic condition to cause a cataract.

The commission found that "William Smith was not a casual employee, and that the injury which he sustained on or about May 1, 1925, arose out of and in the course of his employment with Hoffer Brothers;" and found, as a fact, that "the employment of Smith was in the usual course of the trade, business, or occupation of Hoffer Brothers, his employer."

The assignments of error make it necessary for us to consider only three questions:

(a) Did the commission have a right, upon a review of the case, to consider the defense that claimant was a casual employee, the question not having been raised before the hearing commissioner?

(b) If this defense could be considered, was the claimant a casual employee, and therefore specifically excluded from compensation by section 15 of the Virginia workmen's compensation act?

(c) Was the loss of vision of claimant's eye due to an injury by accident, arising out of and in the course of his employment with Hoffer Brothers?

(a) The law governing reviews by the full commission is found in section 60 of the compensation act (Acts Va. 1918, c. 400), which reads: "If an application for review is made to the commission within seven days from the date of the award, the full commission, if the first hearing was not held before the full commission, shall review the. evidence, or, if deemed advisable, as soon as practicable, hear the parties at issue, their representatives and witnesses, and shall make an award and file the same in like manner as specified in the foregoing section."

It is clear that this section authorizes the commission, in its discretion, to review the evidence already taken before the hearing commissioner, or, if deemed advisable, to hear parties, their attorneys and witnesses, and make an award, as provided by the act.

Section 55 of the compensation act authorizes the commission to make rules, "not inconsistent with this act, for carrying out the provisions of this act," and provides that "processes and procedure under this act shall be as summary and simple as reasonably may be."

The rule, adopted in pursuance of section 55, referring to the conduct of reviews, also leaves it discretionary with the commission to review the opinion of the hearing commissioner, or, where absolutely necessary and advisable, to hear additional evidence, provided the party requesting the review complies with the rule prevailing in the courts for the introduction of after-discovered evidence.

[1] The evidence taken before the hearing commissioner was sufficient to raise the question as to the nature of plaintiff's employment. The commission did not err in permitting defendants, after written notice to plaintiff, to file an additional ground of defense, that claimant was a casual employee, and argue

the same, nor in holding that such defense could be considered upon a review of the case.

[2] (b) Whether or not claimant was a casual employee depends upon a proper construction of paragraph "b," section 2, and section 15 of the Virginia workmen's compensation act. If possible, they should be so construed as to leave both sections in effect.

Paragraph "b," section 2, reads: " 'Employe' shall include every person, including a minor, in the service of another under any contract of hire or apprenticeship, written or implied, except one whose employment is not in the usual course of the trade, business, occupation or profession of the employer;   *   *."

Section 15 of the act provides: "This act shall not apply to common carriers   *   *   nor to casual employees, farm laborers,   *   *"   etc.

[3] It will be assumed that the legislature would not pass an act, two sections of which are in irreconcilable conflict. Under section 2, paragraph "b," *supra,* "employee" includes *"every person   *   *   in the service of another under any contract of hire   *   *   *   except* one whose employment is not in the usual course of the trade, business, occupation or profession of the employer." The language is plain, its meaning clear, and leaves no room for construction.

[4-6] In construing section 15, *supra,* we must, if possible, give to the words, "casual employees," a meaning which conforms with the legislative intent and does not conflict with the meaning of the word "employee," as used in section 2, *supra.* The general purpose of the workmen's compensation act was to provide a compensation for all employees injured in the usual course of the employer's business. Section 2 fully protects this class of employees. To make certain that those whose employment is not in the

usual course of the trade,. business or occupation of the employer, shall not receive compensation, it is provided in section 15 that the act shall not apply to "casual employees," that is, employees engaged in a casual employment. The test is the nature of the employment and not the nature of the contract. An employment cannot be said to be casual where it is in the usual course of the trade, business or occupation of the employer. But it is casual when not permanent nor periodically regular, but occasional, or by chance, and not in the usual course of the employer's trade or business.

[7] The Virginia workmen's compensation act was based on the Indiana act and is written in almost the same language. We quote from each act as follows:

The Indiana act (Acts 1915, chapter 106), in section 76 (b) provides: "The word *employee* shall include every person * * * except one whose employment is both casual and not in the usual course of the trade, business, occupation, or profession of the employer."

Section 2 (b) of the Virginia act provides: "Employee shall include every person * * * except one whose employment is not in the usual course of the trade, business, occupation or profession of the employer."

Section 9 of the Indiana act is as follows: "This act * * * shall not apply to casual laborers, to farm or agricultural laborers and to domestic servants, nor to employees of such persons, unless such employees and their employers voluntarily elect in the manner hereinafter specified to be bound by this act."

And section 15 of the Virginia act reads: "This act shall not apply to common carriers * * * nor to casual employees, farm laborers and domestic servants, nor to employees of such persons, nor to any person,

firm or corporation   *   *   *   unless such employees and employers voluntarily elect in the manner hereinafter specified to be bound by this act."

It will be observed that the corresponding sections of the two statutes are nearly identical, except that the Indiana act uses the word "casual" in both sections, whereas the Virginia act uses it only in section 15.

The Virginia act being, practally speaking, a copy of the Indiana act, the judicial construction placed upon the latter act in that State will be considered to have been adopted along with the act in this State. *Thomas Branch & Co.* v. *Riverside & Dan River Cotton Mills,* 139 Va. 291, 123 S. E. 542; *N. & W. Ry. Co.* v. *Old Dominion Baggage Co.,* 99 Va. 111, 37 S. E. 784, 50 L. R. A. 722.

In the case of *Wagner* v. *Wooley* (Ind. App.), 152 N. E. 856, the claimant was injured while assisting in the construction of a toilet which was being erected by his employer as a part of his garage equipment.   The court said:

"A further contention of appellants is that the labor which was being performed by appellee at the time of his injury was casual labor within the meaning of that term as used in sections 9 and 76 of the compensation act (as amended by Acts of 1919, pages 159, 175); and in support of their contention cite *Bailey* v. *Humrickhouse* (1925), 83 Ind. App. 497, 148 N. E. 428.

"Although section 9 of the act excepts casual labor from the compensation provisions of the law, neverthe ess, under clause (b) of section 76 of the act, an injured employee may recover compensation, even though his employment is casual, if the employment is in the usual course of the employer's business.   See *Caca* v. *Woodruff* (1919), 70 Ind. App. 93, 123 N. E. 120.

"The Bailey case relied upon by appellants is readily

distinguished from the case at bar. In that case, the labor performed was in the construction of a small private garage and not in connection with any business which was being conducted by the employers. In the case at bar, the toilet which was being constructed was for the use of appellants' employees and customers, was reasonably necessary in the operation of the public garage, and the doing of work in the construction of the toilet was employment in the 'usual course' of appellant's business within the meaning of the above designated sections of the act."

In *Caca* v. *Woodruff*, 70 Ind. App. 93, 123 N. E. 120, the Indiana court held that a carpenter, who was employed by a miller to construct additional corn bins, by the hour, should be allowed to recover compensation.

In *Bailey* v. *Humrickhouse*, 83 Ind. App. 497, 148 N. E. 428, the court held that claimant was a farm laborer. In the course of its opinion, the court said: "Even if it be conceded that the appellee was not a farm laborer in the performance of the work in which he was engaged when injured, and whether he was the employee of appellant or of the son-in-law, still he was not entitled to compensation under the compensation act, for he was clearly but a casual employee. When he had finshed the odd jobs that appellant had for him to do, he was paid for his services, and had been told by appellant that he did not know that he had any more work for him. Thereupon, appellant went on a trip to Ohio. About two weeks afterwards, and upon appellant's return, appellee again made application for work, when he was given a one day's job on the garage, and during its performance he was injured. Certainly it must be said that such an employment, whether by appellant or the son-in-law, was both casual, and not

in the usual course of the trade, business, occupation or profession of the employer."

Appellant cites in his petition a number of cases which at first glance seem to be in point. But upon a closer view it is apparent that they are based upon the decisions of the Massachusetts court in the *Gaynor Case*, 217 Mass. 86, 104 N. E. 339, L. R. A. 1916A, 363, and in the *Cheevers Case*, 219 Mass. 244, 106 N. E. 861, and should not be controlling here.

The compensation statutes in the States which have followed the decisions in the Cheevers and Gaynor cases were nearly identical with section 2 of the Massachusetts act (St. 1911, chapter 751, pt. 5). But since these two cases were decided the Massachusetts act has been so amended as to strike out the exception as to casual employment and to make the amended section, to all intents and purposes, identical with paragraph (b), section 2, of the Virginia act, with the exception of the reference to masters of and seamen on vessels. The amended section reads as follows:

"Employees shall include every person in the service of another under any contract of hire, express or implied, oral or written, except masters of and seamen on vessels engaged in interstate or foreign commerce, and except one whose employment is not in the usual course of the trade, business, profession, or occupation of the employer. Any reference to an employee who had been injured shall, when the employee is dead, also include his legal representatives, dependents and other persons to whom compensation may be payable. (In effect October 1, 1914.) (Section 2 as amended by Acts of 1913, chapter 568, section 1, and Acts of 1914, chapter 708, section 13.)"

It is manifest that if the Cheevers and Gaynor cases had been decided under section 2, as amended, the

claimant in each case, instead of being refused an award, as they were under the old statute, would have been allowed an award.

It appears from the evidence that plaintiff would have returned to his work the next day if his eye had permitted him to do so. The work he was doing was not of a casual nature but a work which all furniture stores must do in their usual course of business.

We think the commission rightly held that the plaintiff was not a casual employee.

[8] (c) It plainly appears from the facts certified by the commission that plaintiff's loss of vision of his left eye was due to an injury by accident arising out of and in the course of his employment with Hoffer Brothers, Incorporated.

The order of the commission will be affirmed.

*Affirmed.*